Douglas Han (SBN 232858)
    dhan@justicelawcorp.com
Shunt Tatavos-Gharajeh (SBN 272164)
    statavos@justicelawcorp.com
Phillip Song (SBN 326572)
    psong@justicelawcorp.com
**JUSTICE LAW CORPORATION**
751 North Fair Oaks Avenue, Suite 101
Pasadena, California 91103
Tel: (818) 230-7502 / Fax: (818) 230-7259

*Attorneys for* Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB SCHUMACHER, GENARO VERGARA, and DONALD GIBSON, individually, and on behalf of other members of the general public similarly situated;<br><br>        Plaintiffs,<br>v.<br><br>GEORGIA-PACIFIC CORRUGATED LLC, a Delaware Company; and DOES 1 through 100, inclusive;<br><br>        Defendants. | Case No.: Case No.: 2:19-cv-08632-DMG (AFMx)<br><br>Honorable Dolly M. Gee<br>Courtroom 8C<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with Declaration of Lindsay Kline; [Proposed] Order; and [Proposed] Judgment]<br><br>Date:        April 8, 2022<br>Time:       10:00 a.m.<br>Place:       Courtroom 8C<br><br>Complaint Filed: September 5, 2019<br>FAC Filed:        October 13, 2021<br>Removed:       October 7, 2019<br>Trial Date:      None Set |

1

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; POINTS AND AUTHORITIES IN SUPPORT THEREOF

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 8, 2022, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 8C of the Central District of California, located at the United States Courthouse, 350 West 1st Street, 8th Floor, Los Angeles, California 90012, Plaintiffs Jacob Schumacher, Genaro Vergara, and Donald Gibson ("Plaintiffs") will, and herby do, move this Court for an order:

1) Granting final approval of the class action settlement achieved in this matter and entering judgment pursuant to the terms of the Joint Stipulation of Class Action and PAGA Settlement ("Settlement");

2) Fully and finally approving and directing distribution to the Class of the Net Settlement Amount pursuant to the terms of the Settlement;

3) Fully and finally approving the award of the Attorney Fee Award in the sum of $500,000 (33 1/3% of the Gross Settlement Amount);

4) Fully and finally approving the Cost Award as reimbursement for actual litigation costs in the sum of $20,705.96;

5) Fully and finally approving the Class Representative Enhancement Payments in the sum of $10,000 to each Plaintiff; and

6) Fully and finally approving Administration Costs in the sum of $12,500.

This Motion shall be based upon this Notice of Motion and Memorandum of Points and Authorities, all pleadings on file in this matter, and all oral and/or documentary evidence as may be properly presented at the time of the hearing of this matter.

DATED: March 2, 2022  **JUSTICE LAW CORPORATION**

By: *[signature]*
Douglas Han
*Attorneys for* Plaintiffs

2
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; POINTS AND AUTHORITIES IN SUPPORT THEREOF

## **TABLE OF CONTENTS**

I. INTRODUCTION……………………………………………………………………6

II. THE PARTIES HAVE GIVEN THE BEST PRACTICABLE NOTICE OF THE SETTLEMENT …………………………………….......................6

III. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT................................................................................ 8

    A. Legal Standard …………………………………………………………..8

    B. Strengths of the Case and Risks of Continued Litigation ……………….9

    C. Amount Offered in Settlement............................................................... 11

    D. Extent of Discovery Completed and the Stage of Proceedings ...............12

    E. Counsel Believe the Settlement is in the Best Interest of the Class.........13

    F. There are No Objections to the Settlement.............................................13

IV. THE REQUESTED FEES, COSTS, AND ENHANCEMENT ARE REASONABLE..........................................................................................14

V. CONCLUSION…………………………………………………………………..15

# TABLE OF AUTHORITIES

**Federal Cases**

*Barnes v. Equinox Grp., Inc.*,
   2013 WL 3988804 (N.D. Cal. Aug. 2, 1013) ......................................................9

*Bolton v. U.S. Nursing Corp.*,
   2013 WL 5700403 (N.D. Cal. Oct. 18, 2013) .................................................... 14

*Churchill Village v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ........................................................................... 9

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2nd Cir. 1974) ..........................................................................12

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .........................................................................13

*In re Cylink Sec. Litig.*,
   274 F. Supp. 2d 1109 (N.D. Cal. 2003) ...........................................................12

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ......................................................................................... 6

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980) ........................................................................13

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .....................................................................9, 13

*Isby v. Bayh,*
   75 F.3d 1191 (7th Cir. 1996).............................................................................13

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) .........................................................................12

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ............................................................................ 8

**TABLE OF AUTHORITIES (cont'd)**

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ............................................................................... 6

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................... 8, 9, 11

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ............................................................................... 7

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................. 9

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ............................................................... 9

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ................................................................... 8

*Wren v. RGIS Inventory Specialists*,
    2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ........................................ 9

**Rules and Statutes**

Fed. Rule Civ. Proc. 23 .................................................................................. 8

Fed. Rule Civ. Proc. 23(c)(2)(b) .................................................................... 6

Fed. Rule Civ. Proc. 23(e) .............................................................................. 8

Fed. Rule Civ. Proc. 23(e)(1) ......................................................................... 8

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; POINTS AND AUTHORITIES IN SUPPORT THEREOF

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

By this motion, Plaintiffs seek this Court's final approval of the Settlement reached in this matter by and between Plaintiffs and Defendant Georgia-Pacific Corrugated LLC ("Defendant") (collectively, known as the "Parties").

There have been no objections to the Settlement. Of the one thousand three hundred twenty-seven (1,327) Class Members, there has only been one (1) request for exclusion, representing a participation rate of ninety-nine percent (99.93%). The positive reaction of the Class is likely due to the Settlement being a non-reversionary, guaranteed fund that will be automatically disbursed without the need for claims. The $1,500,000 Gross Settlement Amount – representing approximately forty seven percent (47.71%) of the estimated high end realistic exposure – is substantial given the nature of the claims asserted and the risk of decertification or risk of loss at trial. The *highest* Individual Settlement Share to be paid will be approximately $1,664.06, and the *average* Individual Settlement Share to be paid being approximately $649.92, without applicable taxes, withholdings, and employee garnishments.

For these reasons, the Parties believe the Settlement is deserving of final approval and request that the Court enter an order of final approval.

## II.  THE PARTIES HAVE GIVEN THE BEST PRACTICABLE NOTICE OF THE SETTLEMENT

In approving a class action settlement, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. Rule Civ. Proc. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) (individual notice must be sent to class members who can be identified through reasonable means); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an

6
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; POINTS AND AUTHORITIES IN SUPPORT THEREOF

opportunity to present their objections"). The notice is sufficient for purposes of due process if it contains a description of the litigation and explanation of the right to opt-out of the settlement. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

      The notice procedure approved by the Court was and is the best notice practicable. Pursuant to this Court's order granting preliminary approval on December 8, 2021, the Settlement Administrator, Simpluris, Inc. ("Simpluris"), sent a copy of the court-approved Notice of Class and Representative Action Settlement ("Class Notice") and the Election Not to Participate In ("Opt Out" From) Class Action Settlement ("Exclusion Form") (collectively, known as the "Notice Packet") to all Class Members via first-class regular U.S. Mail on January 21, 2022. The deadline to opt out of or object to the Settlement is sixty (60) calendar days thereafter on March 22, 2022. Declaration of Lindsay Kline on Behalf of Settlement Administrator With Respect to Opt Out, and Objections Received filed concurrently herewith ("Kline Decl."), 7. Class Members were not required to file a claim to participate in the Settlement; the administration of the settlement payments to Class Members is an automatic process.

      If a Notice Packet was returned because of an incorrect address, within ten (10) days from receipt of the returned Notice Packet, Simpluris conducted a search for a more current address for the Class Member and remailed the Notice Packet to the Class Member. Simpluris used skip traces to attempt to find the current address. Simpluris was responsible for taking reasonable steps to trace the mailing address of any Class Member for whom a Notice Packet was returned by U.S. Postal Service as undeliverable. These reasonable steps included, at a minimum: (a) the tracking of all undelivered mail; (b) performing address searches for all mail returned without a forwarding address; and (c) promptly remailing to Class Members for whom new addresses were found. If Simpluris was unable to locate a better address, the Notice Packet was remailed to the original address. Those Class Members who received a remailed Notice Packet, whether by skip-trace or forwarded mail, had an additional

ten (10) days to postmark a request for exclusion or serve an objection to the Settlement. Kline Decl. at 8.

The Notice Packet advised Class Members of their right to request exclusion from the Settlement, object to the Settlement, do nothing, and the implications of each such action. The Notice Packet also advised Class Members of the material terms of the Settlement, the background of the case, the amount Class Members can expect to receive from the Settlement, the manner their payments are calculated, the applicable deadlines and other events, including the Final Approval hearing, and how Class Members could obtain additional information. Kline Decl. at 5, Exhibit A.

Therefore, the Court may proceed to determine the fairness and adequacy of the Settlement and order its approval, secure in the knowledge that all Class Members have been given the opportunity to participate fully in the approval process.

## III. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 23, "[t]he claims . . . of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e)(1). The court must engage in a two-step process to approve a proposed class action settlement. First, the court must decide whether the proposed settlement deserves preliminary approval. *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). Second, after notice is given to class members, the Court must determine whether final approval is warranted. *Id.* A court should approve a class settlement under Rule 23(e) if it "is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotation marks omitted); *accord In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citation omitted).

/ / /

/ / /

Courts in the Ninth Circuit look to the following eight (8) factors to assess whether final approval of a settlement is warranted: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount [that is] offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement." *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011); *Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "Not all of these factors will apply to every class action settlement" and "[u]nder certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telcomms.*, 221 F.R.D. at 525-26. In addition, Ninth Circuit courts consider how the settlement was reached to ensure that it is not a product of fraud or collusion. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

In considering these factors, courts recognize a strong judicial policy favoring settlements, particularly in the context of complex class litigation. *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). There is no requirement to assess whether the settlement is ideal or the best outcome, but "only whether the settlement is fair, free of collusion, and consistent with Plaintiff's fiduciary obligations to the class." *Barnes v. Equinox Grp., Inc.*, 2013 WL 3988804, at *2 (N.D. Cal. Aug. 2, 1013) (quoting *Hanlon*, 150 F.3d at 1027).

**B.     Strengths of the Case and Risks of Continued Litigation**

Plaintiffs will briefly address the strengths of the case and risks of continued litigation to avoid belaboring the points made in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement that was filed on October 15, 2021.

/ / /

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; POINTS AND AUTHORITIES IN SUPPORT THEREOF

1 | Plaintiffs' meal break, rest break, and minimum/overtime wage claims were premised upon the following theories: (1) Defendant allegedly implementing improper, uniform policies and practices that pressured employees to skip, cut short, or take late breaks; (2) Defendant purportedly maintaining a rounding policy that was neither fair nor neutral on its face; and (3) Defendant supposedly instructing employees to work additional hours off-the-clock pre-shift and post-shift.

For Plaintiffs' rest break claims, Plaintiffs' expert determined that there were around 738,401 shifts eligible for rest breaks, resulting in an exposure of about $3,278,500.44 ((738,401 shifts x 20% violation rate) x $22.20). Declaration of Douglas Han In Support of Plaintiffs' Motion For Preliminary Approval of Class Action Settlement filed on October 15, 2021 ("Han Preliminary Decl."), 54. As for Plaintiffs' meal breaks claims, Plaintiffs' expert determined there were 168,293 shifts with missed, late, or short meal breaks, resulting in an exposure of approximately $3,736,104.60 (168,293 shifts x $22.20). *Id.* For off-the-clock work, Plaintiffs have evidence of about one (1) hour of off-the-clock work per week, resulting in damages of around $3,395,023.80 (152,929 workweeks x 1 hour x $22.20) and $5,092,535.70 (152,929 workweeks x 1 hour x rate of $33.30) if using the overtime rate. *Id.* at 55. Finally, Plaintiffs' expert determined that Defendant's improper rounding policy led to a net number of 16,695.1 underpaid hours due to rounding, resulting in damages of approximately $370,631.22 (16,695.1 hours x $22.20). *Id.* at 56. Consequently, Plaintiffs estimate that the potential exposure for unpaid wages are around $10,780,260.06 on the low end and $12,477,771.96 on the high end. *Id.* at 65. After applying the necessary discounts when considering the certification risk and merits risk, Plaintiffs estimate that the realistic exposure for unpaid wages are $1,813,565.71 on the low end and $2,085,167.61 on the high end. *Id.*

///
///
///

10

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; POINTS AND AUTHORITIES IN SUPPORT THEREOF

The Settlement provides fair and prompt relief to all Class Members in lieu of lengthy and expensive continued litigation. Defendant repeatedly indicated its intent to seek decertification of the Class, which would have necessarily increased the time and resources expended by the Parties. If Defendant were unsuccessful, the Parties would then proceed to a class action trial that the Parties estimated would endure for about ten to fifteen (10-15) days, with the inherent possibility of appeal thereafter. The immediate and substantial recovery now, versus a years-long trial and appeal process regarding various potential issues, is a significant factor to be considered. *See Nat'l Rural Telecomms.*, 221 F.R.D. at 526-27 ("Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation.").

By extension, the results obtained in this matter are certainly worthwhile as Class Counsel negotiated a settlement in the sum of $1,500,000 without the need for extended litigation that would have followed had the case not settled. In fact, had the case not settled and went to trial, there was no guarantee that either party would have prevailed. This issue would have also been exacerbated by the legal expenses the Parties would have incurred from continued litigation. Even if the Parties did manage to reach a similar settlement at the later stages of this case, it would have been undercut by the additional expenses incurred. Thus, in obtaining such a sizeable settlement, Class Counsel managed to avoid these risks.

C. **Amount Offered in Settlement**

The high end potential exposure estimated by Plaintiffs (including damages for unreimbursed business expenses, wage statement penalties, and waiting time penalties) is $19,309,937.96. Han Preliminary Decl. at 65. Considering Defendant's non-admission of liability, the Court may discount the total value of the claims given the risks and costs of continued litigation. Accordingly, the high end realistic exposure based on the defenses of Defendant could be argued to be somewhere between zero and $3,143,871.87. *Id.*

A settlement in the gross amount of $1,500,000, which is approximately forty-seven percent (47.71%) of the estimated high end realistic exposure, is well within the range of reasonableness. *See Ma*, 2014 WL 360196 at *5 (finding a settlement that is 9.1% of the total value of the action is within the range of reasonableness) (*citing Linney v. Cellular Alaska Partnership*, 151 F. 3d 1234, 1242 (9th Cir. 1998)). A settlement may be fair and reasonable even where it provides only a fraction of what could have been obtained at trial. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (compromise is essence of settlement); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2nd Cir. 1974) ("that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is" inadequate and should be disapproved). Here, the Settlement provides recovery to Class Members in an amount sufficient to compensate them for most of the actual loss calculated by Plaintiffs.

Consequently, the Settlement is an excellent result for the Class.

### D. Extent of Discovery Completed and the Stage of Proceedings

The amount of discovery completed affects approval of a stipulated settlement because it indicates whether the parties have had an "adequate opportunity to assess the pros and cons of settlement and further litigation." *In re Cylink Sec. Litig.*, 274 F. Supp. 2d 1109, 1112 (N.D. Cal. 2003).

As detailed in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement that was filed on October 15, 2021, extensive discovery and investigation was conducted by both sides. Specifically, Plaintiffs propounded one (1) set of special interrogatories, one (1) set of requests for admissions, and one (1) set of requests for production of documents. The Parties also engaged in several informal discovery sessions to ensure Class Counsel obtained all the necessary documentation and information that would assist them with the mediation process. This, in turn, yielded hundreds of documents relating to Defendant's policies, practices, and procedures regarding paying non-exempt employees for all hours worked, donning

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; POINTS AND AUTHORITIES IN SUPPORT THEREOF

and doffing practices, meal and rest break policies, payroll and operational policies, labor agreements, and collective bargaining agreements governing the Class Members. As part of Defendant's production, Plaintiffs also reviewed time records, pay records, and information relating to the size and scope of the Class, as well as data permitting Plaintiffs to understand the number of workweeks in the Class Period. Finally, Class Counsel interviewed Class Members, who worked for Defendant throughout the Class Period, to obtain a better understanding of Defendant's practices. Han Preliminary Decl. at 17-19.

### E. Counsel Believe the Settlement is in the Best Interest of the Class

The experience and views of counsel also weighs in favor of approving the Settlement. Counsel for Defendant and Class Counsel, both of whom have substantial experience in prosecuting and negotiating the settlement of class action and employment litigation, concur that the Settlement is fair, and Class Counsel have recommended approval of the proposed Settlement as in the best interests of the Class. *See Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir.1996) (noting that a district court is "entitled to give consideration to the opinion of competent counsel that the settlement [is] fair, reasonable, and adequate"); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.") *aff'd*, 661 F.2d 939 (9th Cir. 1981). Class Counsel, together with the Class Representatives, strongly believe that the proposed Settlement is a fair, adequate, and reasonable resolution of the Class's dispute with Defendant and is preferable to continued litigation.

### F. There are No Objections to the Settlement

The Court may appropriately infer that the class action settlement is fair, adequate, and reasonable when, among other reasons, few class members object to it. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *see also Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; POINTS AND AUTHORITIES IN SUPPORT THEREOF

willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness.").

Here, the reaction of the Class Members has been one of overwhelming approval. Of the one thousand three hundred twenty-seven (1,327) identified Class Members, only one (1) Class Member submitted a request for exclusion. In addition, there are no objections to the Settlement. This represents significant support from the Class, and this factor weighs in favor of granting approval. *See Bolton v. U.S. Nursing Corp.*, 2013 WL 5700403, at *2, *4 (N.D. Cal. Oct. 18, 2013) (approving settlement where no objections filed and one of 2,765 class members requested exclusion from settlement).

## IV. THE REQUESTED FEES, COSTS, AND ENHANCEMENT ARE REASONABLE

As detailed in Plaintiffs' Motion For Attorney Fee Award, Cost Award, Administration Costs, and Class Representative Enhancement Payments that was filed on January 14, 2022, Plaintiffs respectfully request the Court approve Class Counsel's application for an Attorney Fee Award in the amount of $500,000 (33 1/3% of the Gross Settlement Amount), Cost Award as reimbursement for actual litigation costs in the estimated amount of $20,705.96 (well below the $25,000 maximum permitted by the Settlement), Class Representative Enhancement Payments in the sum of $10,000 to each Plaintiff, and Administration Costs in the amount of $12,500. There have been no objections to the Settlement generally or to these requested amounts specifically. Thus, Plaintiffs respectfully submit that the Attorney Fee Award, Cost Award, Class Representative Enhancement Payments, and Administration Costs are all warranted and justified considering the work performed over the course of nearly two and one-half (2.5) years and the result achieved on behalf of the certified Class.

///

///

## V. CONCLUSION

Based on the foregoing argument and authority, Plaintiffs respectfully submit that the standards for final approval of Settlement have been met, and the terms of the Settlement are fair, adequate, and reasonable.

Accordingly, Plaintiffs respectfully request that the Court enter an Order in the form proposed and submitted:

1. Granting final approval to the proposed Settlement in this action;

2. Approving distribution of the settlement funds to the Class Members pursuant to the terms of the Settlement;

3. Approving Plaintiffs request for a Class Representative Enhancement Payments pursuant to the terms of the Settlement;

4. Approving Plaintiffs' request for an Attorney Fee Award and Cost Award pursuant to the terms of the Settlement;

5. Approving the Administration Costs to be paid from the Gross Settlement Amount pursuant to the terms of the Settlement; and

6. Entering final judgment as to all Class Members in this action.

DATED: March 2, 2022      **JUSTICE LAW CORPORATION**

By: _____
Douglas Han
*Attorneys for* Plaintiffs